Nicholas D. Kowalczyk
Andria Kowalczyk
2160 W. Chandler Blvd. Ste.19
Chandler, AZ 85224
Phone 480-963-3221
Plaintiffs Pro se

```
_/ FILED   ___ LODGED
___ RECEIVED ___ COPY

   AUG 2 0 2009

CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
BY_____ P DEPUTY
```

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas D. Kowalczyk and<br>Andria Kowalczyk<br>      Plaintiffs, pro se<br><br>Vs.<br><br>Vision Service Plan<br>      Defendant | COMPLAINT ~~CONTRACT~~ AC NC<br><br>JURY TRIAL DEMANDED<br><br>**CV'09 01735 PHX-MEA** |

Plaintiffs, Nicholas D. Kowalczyk and Andria Kowalczyk pro se, bring this civil

action to obtain injunctive relief and damages against Defendant, Vision Service Plan

("VSP"), and show the Court the following:

### JURISDICTION

1.      Plaintiffs bring this action seeking injunctive relief and damages under Sections

15 and 26 of the Clayton Acts, 15 U.S.C. 15 and 26, arising from Defendant's violations

of sections 1 and 2 of the Sherman Act, 15 U.S.C. 1 and 2. Plaintiffs further bring this

action for injunctive relief and damages arising from defendant's violations of plaintiff's

membership and due process rights under California law, defendant's violation of

Arizona antitrust, optometry, consumer protection and insurance laws, defendant's

intentional interference with plaintiff's contractual and business relationships with each

other and others and defendants breach of contract with plaintiffs.

1

2.      The court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, 1332, and

1337, and through principles of supplemental jurisdiction, 28 U.S.C. 1367. Should

plaintiffs not obtain timely injunctive relief, each will sustain damages of at least

$75,000, exclusive of interest and costs.

## VENUE

3.      Venue is proper in this forum under 28 U.S.C. 1391 and section 12 of the Clayton

Act, 15 U.S.C. 22. This case arises from defendant's illegal efforts to terminate VSP's

contract with plaintiffs in their August 21, 2003. VSP denied plaintiffs due process and

violated items 5 and 6 in section C. P.5 of MEMBER DOCTOR AGREEMENT WITH

VISION SERVICE PLAN. The contract between VSP and plaintiffs was entered into in

this district and have been performed in this district. Defendant's illegal conduct has

injured and will continue to injure plaintiffs in their business or property in this district,

and has had and will continue to have anticompetitive effects in this district, thus a

substantial part of the events or omissions giving rise to the claims occurred, and a

substantial part of the property that is the subject of this action is situated in this judicial

district.

## PARTIES

4.      Practitioner Plaintiff, Nicholas D. Kowalczyk, is a duly licensed optometrist

rendering optical and optometric care in Chandler, Maricopa County, Arizona. Plaintiff,

Andria Kowalczyk, is self-employed and handles the front office of Plaintiffs office.

Plaintiffs are citizens and residents of Arizona. Dr. Kowalczyk owns stock in his

professional corporation. Plaintiffs practice at Your Eyes Only 2160 W. Chandler Blvd

2

#19 Chandler, AZ 85224.

5.      Defendants, Vision Service Plan ("VSP"), is, on information and belief, a

California non-profit corporation with its principal places of business in Rancho Cordova,

California. VSP offers, administers, and/or underwrites vision care insurance plans in

every state in the nation. VSP is also believed to maintain a health maintenance

organization in Arizona. Defendant will be served with process according to statute.

## INTERSTATE COMMERCE

6.      Defendant is engaged in interstate commerce. VSP contracts with many corporate

employers, government agencies, and/or other health insurers who (a) remit across state

lines substantial premium payments to VSP for underwriting or administering vision care

insurance for their employees, insured, or dependents; and (b) sell interstate commerce,

products and services, the prices of which are affected by the premiums paid by such

employers, insurers, or governmental entities to VSP. VSP also contracts with Arizona

Optometrists to provide primary vision care to VSP insured's. VSP also sells optical

goods across state lines to Arizona optometrists and optical businesses. At all material

times, VSP has used interstate banking facilities and purchased substantial quantities of

goods and services across state lines for use in underwriting or administering vision care

service plans. Moreover, on information and belief, VSP recently initiated an internet web

portal in which it sells eye care products directly to Arizona optometrists and optical

businesses.

## FACTUAL BACKGROUND

7.      VSP was established in 1995. VSP offers, administers, and/or underwrites vision

care insurance plans. VSP contracts with businesses, government agencies, health care

insurers, and other organizations to provide prepaid primary vision care coverage to their employees, insured's, and dependents.

8.      "Primary" vision care is the diagnosis and overall management of ocular conditions, as opposed to specialized treatment, which may consist of laser surgery, cataract surgery, or corneal and retinal specialty care.

9.      VSP contracts directly with private practice optometrists, such as practitioner plaintiffs and, to a lesser degree, ophthalmologists, to provide vision care services for patients covered by VSP's plans. Those services consist primarily of diagnostic and dispensing services as well as the sale of optical goods such as glasses, contact lenses, cleaner and frames. VSP provides no optical services to its own patients. However, VSP does have a direct ship program for contact lenses that is coordinated with the provider.

### VSP's Market Force in the Optometric Industry

10.     On information and belief, for years, VSP operated solely in California and licensed companies in other states to run independent vision care plans. Commencing in the 1980's and continuing today, VSP has attempted to secure and maintain a dominant position in the vision care insurance industry. A reading of its own website reveals the extent to which VSP exerts its dominant market position in the United States. For example, VSP boasts that it has nearly 38 million members, comprising one (1) out of every eight (8) patients in America. VSP has contracts with over 20,000 clients, including 216 out of the 500 Fortune 500 companies. VSP has a network of thousands of doctors and had revenues in 2003 of almost $2 billion. VSP states that 94% of the entire Arizona population has access to a VSP doctor. Except for Alaska, every other state has at least 84% of its population with reasonable access to a VSP doctor, with many states having

4

100% access.

11.     VSP today is the largest prepaid primary vision care organization in the United States. VSP does business in every state of the United States of America and in the District of Columbia. VSP's plans cover approximately 38 million people.

12.     VSP has the largest network of vision care providers in the country. On information and belief, approximately 35,000 optometrists nationwide are VSP panel doctors. Upon information and belief, in most, if not all, of the areas in which VSP does business, including the Phoenix metropolitan area, a high percentage of that area's optometrists are VSP panel doctors. Upon information and belief, in the Phoenix metropolitan area, approximately 70% of optometrists who belong to a prepaid primary vision plan are VSP panel doctors.

13.     Optometrists have little choice but to become VSP panel doctors given VSP's dominant role in the primary vision care insurance industry, especially in light of the fact that few patients will go "out of network" and pay out of their own pocket for the ye care they need for themselves and their children when they have insurance that pays suich costs for them. In October or November of 2003, VSP instituted major changes in their program to make it more difficult for non-panel members to offer VSP services. Payments by VSP to VSP panel doctors typically constitute a significant part of the doctor's professional income. Practitioner plaintiffs received approximately $4.5 to $5.5 million in a recent represent over 50% of their revenue, wish some as high as 65% to 70%.

### VSP's Unlawful Exercise of Its Market Power

### And the Department of Justice Suit Against VSP

14.     Under VSP's standard contract, termed the "Member Doctor Agreement", each optometrist becomes a panel doctor, also known as a participating member. To maintain its nonprofit status under California law, VSP is required to offer participating membership to all licenses optometrists who meet its standards. Cal. Corp. Code 10810 and 10811 (West 2002).

15.     California law permits VSP to establish and maintain regulations governing the conduct of its participating members. The Member Doctor Agreement accordingly requires panel doctors to adhere to certain "Conditions of Membership". While these conditions of membership are set forth in written documentation agreed to by the prospective panel doctor when he is admitted, and as more fully described below, VSP has unilaterally and illegally changed the Conditions of Membership for Dr. Kowalczyk through a letter sent to Dr. Kowalczyk individually on 8/21/03. A determination by VSP that a panel doctor does not meet any one Condition of Membership can result in termination of the panel doctor's membership and attendant ineligibility to service VSP enrollees. The letter received by Dr. Kowalczyk and subsequent communication with VSP terminated and revoked his rights of hearing/appeal granted in the Member Doctor Agreement. VSP Representative, Pat Gomez, stated the reason for this retraction letter by VSP was the huge file of fraud sent by dissolved VSP of Arizona to California's office. Dr. Kowalczyk was provided a letter of exoneration by VSP of Arizona CEO and Board of no wrong doing in connection with his contract with VSP and therefore this is defamation of Dr. Kowalczyk's reputation.

16.     VSP is now using and has used the Conditions of Membership as a means of preventing competition. For many years. VSP inserted in its Conditions of Membership a

6

"most favored nation" clause, under which a panel doctor was required not to charge a fee

to VSP that were higher than those charged to the doctor's non-VSP patients. The Federal

government took offense to that clause and sued VSP to have that clause removed from

its Conditions of Membership. United States v. Vision Service Plan, 1996 WL 351147

(D.D.C.). Due to VSP consent agreement with Justice Department, VSP was required to

reinstate Dr. Kowalczyk in approximately 1997 but did not, claiming reason to be State

Board of Optometry's disciplinary action of which Dr. Kowalczyk was exonerated and

VSP's involvement in State Board of Optometry's action, not known to Dr. Kowalzcyk at

the time. Therefore Dr. Kowalczyk could not file a claim with the Justice Department in

this regard, at the time.

17.      According to the U.S. Department of Justice, the "most favored nation" clause

resulted in VSP panel doctors declining to give any discounts to any insurance plan or

patients, and in competitors being blocked from entering the prepaid primary vision care

market. The Justice Department filed an antitrust action against VSP in 1994. VSP settled

the antitrust action by entering into a consent decree (the "Consent Decree") in 1996

under which it, *inter alia*, ceased use of the "most favored nation" clause.

18.      Further, under the Consent Decree, VSP additionally agreed not to take "...any

action to discourage any VSP panel doctor from participating in any non-VSP plan..." or

from "communicating in any fashion with any VSP panel doctor regarding the doctor's

participation in any non-VSP plan or regarding the doctor's fees charged to any non-VSP

patient or to any non-VSP plan." *United States v. Vision Service Plan*, 1996 wl 351147

(D.D.C.)

## Recent Anticompetitive Conduct

19.   Dr. Kowalczyk received a phone call and subsequent letter from Vision Service Plan informing him that his VSP membership as a panel doctor was approved in July, 2003. Dr. Kowalczyk's name was added to VSP doctors list on VSP website. Telephonic training was provided by VSP representative who's name was Pandora.

20. VSP determined what they were going to pay us. Altair consignment of frames was mandatory. Paychecks were sent to us from VSP lab discount for VSP jobs. VSP lab discount was provided to us for VSP patients. We informed established patients that we were a VSP panel doctor. We were provided insurance information from VSP for serving patients. We were provided discounts, etc. that provided us with huge savings. We have been told that VSP is the backbone of optometrists in sole practice at this time, and we have experienced how difficult it is to survive without being a VSP doctor. We feel that VSP has been discriminatory because it appears we are the only sole practice in the East Valley that is not a VSP provider. Also, we feel VSP has been discriminatory in giving out insurance information to VSP doctors and not giving out the same information to non-VSP doctors when patients have signed permission for us to get this information HICF (Health Insurance Claim Form). Also, this form authorizes payment of medical benefits to undersigned doctor and yet VSP changed their policy in 2003 and will only send these checks directly to patients due to Privacy Act that was passed. At this time, Dr. Kowalczyk appears to have a valid contract as a VSP panel doctor and VSP breached contract by not providing Dr. Kowalczyk a hearing as he requested

### CAUSES OF ACTION
### COUNT I
### Restraint of Trade
### (Primary Vision Care Services Market)

21.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 20 above as if set forth herein.

22.     Section 1 of the Sherman Act provides that:

> Every contract ... in restraint of trade or commerce among the several
> States, or with foreign nations, is declared to be illegal. Every person
> who shall make any contract or engage in any combination or conspiracy
> hereby declared to be illegal shall be deemed guilty of a felony, and, on
> conviction thereof, shall be punished by fine not exceeding $10,000,000
> if a corporation, or, if any other person, $350,000, or by imprisonment not
> exceeding three years, or by both said punishments, in the discretion of
> the court.
> 15 U.S.C. Sec. 1.

23.     Defendant's breach of contract illegally restrains trade in the marketplace for the

provision of primary vision care services to enrollees of managed care plans in the

Phoenix metropolitan area and other areas where Dr. Kowalczyk practices. It also seeks

to force Plaintiffs out of business and thus reduces competition. VSP has membership

agreements with the vast majority of optometrists who provide primary vision care

services to enrollees of managed care plans in the Phoenix area. Defendant's enforcement

of illegal and anticompetitive terms and conditions of membership, and participation in

the effort to control Practitioner Plaintiffs' practice methods under draconian and take-it-

or-leave-it provisions, will result in (1) a reduction of the number of doctors available

from which enrollees in managed care plans may choose, and (2) disrupting and illegal

control over existing doctor-patient relationships. To the extent that enrollees in managed

care plans opt to see an out-of-network provider as a result of the unlawful conduct of

VSP, they could incur higher out-of-pocket expenses. In some instances, the disruption of

existing doctor-patient relationships might even force patients to forego receiving primary

vision care services altogether. For many patients, this will result in an undesired

9

consequences of terminating a doctor-patient relationship that in many instances has been

nurtured over the course of several years.

**COUNT II**
**Monopolzation and Attempted Monopolization**
**(Prepaid Primary Vision Care Market)**

24.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 23 above as if set forth herein.

25.     Section 2 of the Sherman Act provides:

> Every person who shall monopolize, or attempt to monopolize, or
> combine or conspire with any other person or persons, to monopolize
> any part of the trade or commerce among the several States, or with
> foreign nations, shall be deemed guilty of a felony, and, on conviction
> thereof, shall be punished by fine not exceeding $10,000,000 if a
> corporation, or, if any other person, $350,000, or by imprisonment
> not exceeding three years, or by both said punishments, in the
> discretion of the court.

> 15 U.S.C. § 2

26.     VSP's conduct constitutes the intentional and unlawful maintenance of monopoly

power in the relevant market for prepare primary vision care in the Phoenix metropolitan

area, in violation of 15 U.S.C. 2. VSP has an overwhelming share of the relevant market

which allows it to control prices paid to optometrists and ophthalmologists; and to

exclude competition by other prepaid primary vision care plans or networks of

optometrists and ophthalmologists in the Phoenix metropolitan area.

27.     Alternatively, VSP's conduct is an attempt to monopolize the market for prepaid

primary vision care in the Phoenix metropolitan area, in violation of 15 U.S.C. 2.

Defendant has acted with specific intent to monopolize this market and has sufficient

market power that there is a dangerous probability that it will succeed in illegally

10

monopolizing the market.

28.     VSP has monopolized, and attempted to monopolize, the relevant prepaid primary vision care market in many areas in which VSP does business, and particularly in a relevant area in and around Phoenix, Arizona, by engaging in various exclusionary acts, including (1) the hostile threats of termination of licensees as evidenced *inter alia* (2) the maintenance and enforcement of its Conditions of Membership.

29.     VSP's conduct has injured and/or will injure competition to the prepaid primary vision care market in the Phoenix metropolitan area and in Arizona generally by limiting the ability of Dr. Kowalczyk to compete with VSP. Because VSP is so overwhelmingly dominant in the prepaid primary vision care market in the Phoenix metropolitan area as well as in other parts in the State of Arizona and the United States, it accounts for a very large percentage of the practices of many doctors.

30.     Without additional competition in the market for prepaid primary vision services, VSP will be free to exploit its market power by, among other things, charging supra-competitive prices (premiums or network access fees) to its customer (i.e., employers, other health insurers, etc.) and by limiting the choices of doctors that enrollees in VSP plans may select.

## COUNT III
### Monopolization, Attempted Monopolization
### (Primary Vision Care Services Market)

31.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 30 above as if set forth herein.

32.     The conduct of VSP constitutes the intentional and unlawful maintenance of monopoly power in the relevant market for the provision of primary vision care services

11

to enrollees in managed care plans in Arizona, in violation of 15 U.S.C. 2. VSP has a

sufficient share of the relevant market to confer upon it the ability: (1) to control the price

of vision care services paid on behalf of managed care enrollees; and (2) to exclude

competition by other providers of primary vision care services in Arizona. Upon

information and belief, VSP controls at least 50% of the relevant market in Arizona. (3)

VSP actually tells our patients they are not maximizing their insurance by coming to us, a

non-panel doctor, as far as VSP is concerned and another reason to file this lawsuit.

33.     In the alternative, the conduct of VSP, using the VSP Member Doctor Agreement

as its vehicle, is an attempt to monopolize the market for the provision of primary vision

care services to enrollees in managed care plans in Arizona, in violation of 15 U.S.C. 2.

Defendant has acted with specific intent to monopolize this market and has sufficient

market power that there is a dangerous probability that it will succeed in illegally

monopolizing the market.

34.     VSP has also monopolized the relevant market for the provision of primary vision

care services to enrollees in managed care plans in Arizona in violation of 15 U.S.C. 2.

35.     VSP has monopolized or attempted to monopolize the market for the provision of

primary vision care services to enrollees in managed care plans in Arizona by engaging in

various exclusionary acts, including the maintenance and modification of its Conditions

of Membership.

36.     VSP's adoption and enforcement of anticompetitive terms and conditions of

membership, and exclusion of Practitioner Plaintiffs from the VSP panel, will result in a

reduction of the number of doctors available from which enrollees in managed care plans

may choose, disrupting existing doctor-patient relationships, and potentially

inconveniencing enrollees in other instances. To the extent that enrollees in managed care plans opt to see an out-of-network provider as a result of the unlawful conspiracy, they incur higher out-of-pocket expenses. In many instances, the disruption of existing doctor-patient relationships might even force patients to forego receiving vision care services altogether. For many patients, this will result in an undesired consequence of terminating a doctor-patient relationship that in many instances has been nurtured over the course of several years.

**COUNT IV**
**Violation of the Arizona Free Enterprise and Antitrust Act of 1983**

37. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 36 above as if set forth herein.

38.    VSP's conduct constitutes a conspiracy to restrain trade and a willful monopolization of, or attempts to monopolize, relevant markets in violation of ARS 44-1402. Furthermore, VSP's conduct is also in violation of Arizona Constitution. Monopolies are contrary to the genius of a free government and shall never be allowed. A copy of this Complaint will be forwarded to the Attorney General of Arizona if required when served.

39.    VSP's unilateral changes of its Conditions and Membership constitute a contract combination, and conspiracy in restraint of trade and commerce in violation of ARS 44-1402.

40.    VSP has unlawfully monopolized a part of trade and commerce in violation of Arizona ARS 44-1402.

41.    Alternatively, VSP has attempted to monopolize and conspire to monopolize a

part of trade and commerce in violation of ARS 44-1402. VSP's conduct demonstrates its specific intent to monopolize the market and it has sufficient market power that there is a dangerous probability what it will achieve such a goal.

## COUNT V
### Interference with Contractual/Business Relations

42.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 41 above as if set forth herein.

43.    VSP has intentionally, willfully, maliciously, and without privilege interfered with Practitioner Plaintiffs' existing contractual relationship with Dr. Kowalczyk and with non-VSP doctors, as well as prospective contractual and business relationships with non-VSP doctors.

44.    In addition, California law imposes upon each party to a contract a duty of good faith and fair dealing in its performance and its enforcement. This covenant of good faith and fair dealing finds particular application in situations where one party is invested with a discretionary power affecting the rights of another; such power must be exercised in good faith. Defendant has breached its duty of good faith and fair dealing to Plaintiff's damage.

45.    Plaintiffs have suffered, and will continue to suffer, damages as a result of VSP's conduct.

## COUNT VI
### Violation of Membership Rights Without Due Process

46.    Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 45 above as if set forth herein.

47.    VSP is incorporated, maintains its headquarters, and enjoys tax-free status in

California. California law requires that VSP allow all qualified vision care providers to become members. Cal. Corp. Code 10810 (West 2002). It further obligates VSP to apply its regulations uniformly. Cal. Corp. Code 10810 and 10811 (West 2002). It also imposes on VSP a duty not to terminate the membership of VSP panel doctors arbitrarily and before affording such doctors due process, or fair procedures. Cal. Corp. Code 5341 (West 2002). Furthermore, as stated above, Defendant has breached its duty of good faith fair dealings as required by California law to Plaintiffs' damage.

48.     VSP has unilaterally eliminated all of the Practitioner Plaintiffs' appeal rights required under California law. California law also requires that impartial adjudicators must make the final decision whether a termination of VSP membership is appropriate. Cal. Corp. Code 5341 (West 2002). VSP's actions to date clearly violate that law.

### COUNT VII
### Violation of Arizona Optometry Laws

49.     Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 48 above as if set forth herein.

50.     VSP's conduct is prohibited by the Arizona Optometry statutes. VSP's unilateral attempt to control the professional judgment, manner of practice and practice of the optometrist violates Arizona Optometry statutes ARS 32-1701 et seq. The VSP Member Doctor Agreement indirectly influences the professional fees and directly controls the hours of operation, including VSP's direct threats to terminate Practitioner, Plaintiffs' agreements with VSP in an effort to control the professional judgment and manner of practice of the Practitioner Plaintiffs.

51.     Beginning at a time unknown and continuing through the present, Defendant

conspired with Eyefinity and Altaireyewear, which are believed to be wholly owned subsidiaries of Defendant VSP and are completely controlled by VSP, to violate the Arizona Optometric statutes et seq to Plaintiffs damage.

52.     Plaintiffs seek recovery of their actual damages, treble damages under, pre= and post-judgment interest, costs of court and reasonable and necessary attorneys' fees.

## COUNT VIII
## Violation of Arizona Deceptive Trade Practices - Consumer Protection Act

53.     Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 52 above as if set forth herein.

54.     Unfair trade practices are prohibited by ARS 44-1401 et seq. Plaintiffs bring this cause of action for violation of ARS 44-1522 A Deceptive Trade Practices. Plaintiffs assert that Defendant has violated ARS 44-1401 et seq, inter alia.

(a)     engaging in false, misleading, or deceptive acts or practices in the conduct of Defendant's trade;

(b)     causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by another;

(c)     representing services have sponsorship, approval, characteristics, uses, or benefits that they did not have;

(d)     violating the Arizona Insurance statutes

(e)     violating the Arizona Optometry statutes

(f)     engaging in unfair competition in a monopolistic manner

55.     Plaintiffs believe that the conduct of Defendant was committed "knowingly" as that term is understood in Arizona under ARS 44-1522 A.

56.     Plaintiffs seek recovery of their actual damages, trebel damages under ARS 44-1408 B, pre- and post-judgment interest, costs of court and reasonable and necessary attorneys' fees.

### COUNT IX
### Breach of Contract

57.     Plaintiffs incorporate by this reference the allegations contained in Paragraphs 1 through 56 above as if set forth herein.

58.     Practitioner Plaintiffs bring a claim for breach of contract seeking recovery of their actual damages, together with reasonable and necessary attorneys fees and costs of court.

### COUNT X
### Violation of Arizona Insurance Laws

59.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 58 above as if set forth herein.

60.     No person shall engage in this state in any trade practice, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

61.     Specifically, it is a violation to enter into any agreement to commit, or by any concerted action committing, any act of boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in the business of insurance.

62.     A violation of Arizona Insurance Laws is considered a violation of the Deceptive Trade Practice ARS 44-1522 A. Plaintiffs are entitled to recover and hereby seek recovery of their actual damages, trebel damages, pre- and post-judgment interest, costs of court and reasonable and necessary attorneys' fees.

17

## COUNT XI
### Equitable Emergency, Preliminary and Permanent Relief Laws

63.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 62 above as if set forth herein.

64.     There is a real and immediate threat to Practitioner Plaintiffs that they will soon

go out of business because of the loss of VSP membership rights. In letters to Practitioner

Plaintiff, VSP threatens Plaintiff's livelihood. Practitioner Plaintiffs are precluded from

selling or expanding their practice because of the attempted threat of loss of their VSP

membership status and the attendant revenue stream. As a result, Practitioner Plaintiffs

have no adequate remedy at law because their inability to practice under the regime

imposed upon them by VSP. VSP knows full well that a large percentage of Practitioner

Plaintiffs' business results from the care give\n to VSP patient enrollees. Absent an

emergency relief, Practitioner Plaintiffs are at extreme risk by having their contractual

arrangement terminated by VSP without a hearing and opportunity to appeal. VSP has

said under oath, they always allow hearing of panel member.

65.     Plaintiffs seek a temporary restraining order and, after a hearing on the matter,

seek a preliminary injunction preserving the status quo and preventing SVP from:

        (a)     threatening or taking any action, directly or indirectly, against Plaintiffs, as

retaliation for the filing of this Complaint in this Court or with the Arizona Attorney

General if reporting is required by law

        (b)     refusing to process, or delaying in the processing of, any claims for or on

behalf of any VSP patient solely because that patient is Dr. Kowalczyk's patient

        (c)     refusing to admit to any of the programs VSP has for any member panel

doctor; or non-member doctors.

(d)     communicating to members of the profession and public that Dr. Kowalczyk is not qualified or is less qualified to treat patients than other VSP panel members

(e)     not allowing Dr. Kowalczyk participation in Eyefinity programs

66.     Plaintiffs assert that all conditions precedent have occurred, been performed or are excused.

## BASIS FOR LAWSUIT

67.     There has been a long history with Vision Service Plan and Dr. Kowalczyk since early 1980's.

68.     This case arises out of a letter to Plaintiffs dated August 21, 2003 informing plaintiffs their VSP membership that was approved and became effective July 31, 2003 was being retracted.

69.     Upon our application being approved and Plaintiffs being added to the Doctor Member list, several VSP patients scheduled exams which we've completed and were reimbursed by VSP.

70.     Several of these patients got our listing off the Member Doctors VSP website.

71.     The sudden retraction in the letter faxed to plaintiffs dated August 21, 2003 came with out warning.

72.     Our approval as a member doctor on July 31, 2003 came after a very exhaustive credential zing period and background check of all aspects of the plaintiffs.

73.     Plaintiffs approval as member doctor also came after a Letter of Exoneration dated August 21, 1997 approved by the VSP Board of Directors of any and all wrong

doing in connection with plaintiffs contract with the company was accepted by VSP.

74.    VSP specifically violated Section C of the Member Doctor Agreement with Vision Service Plan, conditions 5 and 6.

75.    Condition 5 states, "to notify Member Doctor if information obtained during the credentialing process varies substantially from the information provided by Member Doctor. To permit Member Doctor to review and correct information obtained by VSP in the credentialing process."

76.    Condition 6 states, "to provide Member Doctor written notice of the reasons for any adverse decision resulting a change in membership status. To comply with all state and federal laws governing the rights of the Member Doctor to due process in the appeal of all adverse decisions resulting in a change of contractual privileges or membership."

77.    VSP was not specific to what they say they refused to inform us of is a violation of condition 5 above.

78.    On August 22, 2003, plaintiffs faxed a letter to VSP's credentialing department disagreeing with VSP and asked for the appropriate officer to contact us immediately to discuss the options.

79.    When plaintiffs received no response they twice called VSP CEO Roger Valine's secretary for a hearing to learn how plaintiffs had not been forthcoming and misrepresented the nature of their removal from VSP.

80.    Plaintiffs subsequently spoke with Mr. Moss, VSP's legal counsel, who advised us that VSP was not obligated to provide us with a hearing.

81.    In a letter faxed to VSP on March 5, 2006 to VSP. Plaintiffs reiterated that a letter of exoneration was provided to VSP. This letter of exoneration was signed by now

20

dissolved VSP of Arizona CEO and approved by entire VSP Board.

82.     Further, the March 5, 2006 letter stated on July 10, 2003 plaintiffs provided Pam Swart out of VSP information concerning our actions with the State Board of Optometry and offered to provide more details on this. Plaintiffs were advised that no further information was needed.

83.     In the March 5,2006 letter to VSP CEO, Roger Valine, plaintiffs asked only that they be informed of the specific information that VSP has acquired that clearly indicates that plaintiffs were not forthcoming and misrepresented the  nature from their removal from Arizona VSP.

84.     In this same letter plaintiffs add "we are also asking for the opportunity to be heard in a neutral, non-prejudicial environment, in hopes we may clear this matter up accurately."

85.     Plaintiffs received a letter dated September 3, 2003 informing us effective October 1, 2003 VSP will only provide patient eligibility and benefits information to VSP covered members and to VSP network doctors.

86.     In addition, VSP will not honor assignments of benefits for claims received after September 30, 2003. Rather, claim reimbursements will be sent directly to the covered member. This is inaccurate and VSP makes exceptions. We received a letter in 2008 addressed "Dear Non-VSP Doctor". The letter basically stated that if we sign for permission the VSP check could go to patient but otherwise the check will be sent directly to Dr. Kowalczyk.

87.     VSP's suddenly hostility toward plaintiffs comes at a time plaintiffs are suing the Arizona State Board of Optometry involving several infractions regarding VSP.

88.    VSP not only sends check to patients only, but also includes a flyer that says by coming to plaintiffs the VSP patients do not maximize their benefits.

89.    VSP patients do not get the same value as going to a VSP panel doctor which is false.

90.    Plaintiffs have had VSP patients call to cancel appointments that were already scheduled and did not want to reschedule. Some of these patients were established patients of Dr. Kowalczyk.

91.    In Andria's 12/30/05 letter to CEO of VSP Roger Valine, Andria tells Mr. Valine that Texas Today's Vision lawyers VSP always provides for a hearing.

92.    In the same letter, plaintiffs again ask for a hearing.

## PRAYER

WHEREFORE, plaintiffs request the following relief:

a.    An injunction forbidding defendant from acting in the manner described above;

b.    An award of plaintiffs' actual damages, trebled pursuant to 15 U.S.C. 15 and Arizona ARS 44-1408 B et seq.;

c.    An award of treble, punitive and/or exemplary damages under Arizona state law; and,

d.    An award of their costs, including reasonable and necessary attorneys' fees, as provided under 15 U.S.C. 15.

        Dated this 20th day of August, 2009.

Respectfully submitted,

Nicholas D. Kowalczyk, pro se

Andria Kowalczyk, pro se
2160 W. Chandler Blvd. Suite 19
Chandler, AZ 85224
(480) 963-3221